**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

ROBERT J. CAPO,                          )
                                          )
                 Plaintiff,               )        Civil Action No. 04-1473
                                          )
        v.                                )        Judge Cercone
                                          )        Magistrate Judge Caiazza
PITTSBURGH BOARD OF PUBLIC                )
EDUCATION, *et al.*,                      )
                                          )
                 Defendants.              )

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.  RECOMMENDATION**

        It is respectfully recommended that the Defendant's Motion for Summary Judgment

(Doc. 40) be granted in part and denied in part, as described below.

**II.  REPORT**

**BACKGROUND**

        The Plaintiff Robert J. Capo is a licensed civil engineer previously employed by the

Pittsburgh Board of Public Education ("the School District").  *See generally* 2d Am. Compl.

(Doc. 21).  Beginning in 1998, Mr. Capo became dissatisfied regarding a series of job title/

promotion decisions made by the Defendants.  *See generally id.*  Although the Plaintiff initially

attributed his perceived mistreatment to age discrimination, his later complaints focused on

retaliation for the exercise of First Amendment rights and engagement in protected activity under

the Age Discrimination in Employment Act ("ADEA").  He also alleges Equal Protection

violations based on reverse-race discrimination and national origin.  *See generally id.*

The parties are familiar the long and storied history of this case.  The court will restrict is discussion to the most significant events, which are summarized in "time line" fashion below:[1]

| | |
|---|---|
| 1998 | The School District created the position of Assistant Project Manager.  Mr. Capo's application was rejected, and a younger individual was selected.  The Plaintiff complained, and the School District agreed to reclassify his position so that he too would hold the title of Assistant Project Manager.  *See* 2d Am. Compl. at ¶ 9. |
| "summer," 2000 | Mr. Capo filed a charge of discrimination with the EEOC, alleging violation of the ADEA.  The Plaintiff complained that he should have been afforded seniority over the newly hired Assistant Project Manager.  *See* Defs.' Statement of Facts at ¶ 18. |
| 10/18/00 | The parties settled the EEO charge, with the School District agreeing to afford Mr. Capo greater seniority.  *See* 2d Am. Compl. at ¶ 14. |
| 10/00 | Project Manager Al Biestek, the Plaintiff's supervisor, had a stroke and was absent from work until March 2001.  Another Assistant Project Manager, Omar Nabas, was temporarily promoted to the position.  The Plaintiff claims he was not selected, despite greater qualification, in retaliation for his 2000 EEO charge.  *See generally* Defs.' Statement of Facts at ¶¶ 25-26, 28; 2d Am. Compl. at ¶ 15. |
| 10/00-11/00 | The Plaintiff voiced disagreement regarding the Defendants' decision(s) to pay a prime contractor despite Mr. Capo's belief the contractor was overcharging.  This led Mr. Nabas, the Plaintiff alleges, to retaliate against him.  *See generally* 2d Am. Compl. at ¶¶ 19-21; Defs.' Statement of Facts at ¶¶ 32-38. |

---

[1]  The facts recited herein are culled from the Defendants' Statement of Facts (Doc. 41) and the Second Amended Complaint.  Unless the undersigned otherwise specifies, the facts discussed below do not appear in material dispute.

| | |
|---|---|
| 11/7/00 | At a meeting, Mr. Capo expressed frustration over a subcontractor's refusal to resolve a problem, and Mr. Nabas stated in the presence of others that maybe the Plaintiff "should get down on [his] knees" and perform a sexual act on the subcontractor.  *See* Defs.' Statement of Facts at ¶¶ 41-42. |
| 2/6/01 | The Plaintiff filed a complaint with the School District's Office of Equity and Compliance regarding the above incident, which he characterized as sexual harassment.  *See* 2d Am. Compl. at ¶ 22; Defs.' Statement of Facts at ¶ 74. |
| 2/14/01 | Mr. Nabas informed the Plaintiff that his construction projects were to be "reassigned."  According to Mr. Capo, the reassignments were unfavorable and made in retaliation.  *See generally* 2d Am. Compl. at ¶ 24; Defs.' Statement of Facts at ¶ 66. |
| 5/01 | Mr. Capo was assigned to perform a "facilities assessment study," a task so labor intensive the Plaintiff believed it impossible for a single person to complete within the time frame contemplated.  Mr. Capo asserts the Defendant(s) assigned the task to set him up for discipline/termination.  *See* 2d Am. Compl. at ¶ 27; *see also generally* Defs.' Statement of Facts at ¶¶ 85-97. |
| 6/18/01 | The Plaintiff filed charges of discrimination with the EEOC and Pittsburgh Commission on Human Relations, alleging retaliation under Title VII (regarding the complaint of sexual harassment) and the ADEA.  *See* Defs.' Statement of Facts at ¶ 77. |
| 8/01 | Mr. Capo had two physical altercations with one of the School District's general contractors, incidents allegedly initiated by the contractor.  The Plaintiff sought to have the contractor removed and/or criminally charged, but Mr. Capo eventually was removed from the project.  *See* 2d Am. Compl. at ¶ 30; *see also generally* Defs.' Statement of Facts at ¶¶ 98-110. |

| 8/28/01 -<br>8/29/01 | The Plaintiff faxed correspondences to Superintendent John Thompson, outlining various grievances ranging from the contractor's alleged physical assaults to alleged "illegal activities and disregard for public money" and his "not being treated fairly" on projects. *See* Defs.' Statement of Facts at ¶¶ 111-33; *see also* correspondences, filed at CM/ECF Doc. 40.7, pgs. 23-25, 26-28. |
|---|---|
| 10/15/01 | Defendant John Walluk wrote a memorandum, expounding on an earlier one, recommending that Mr. Nabas be promoted to the position of Project Manager of Construction.  Again, Mr. Capo believes he was more qualified for the position. *See* Defs.' Statement of Facts at ¶¶ 136-37. |
| 9/25/02 | The School District approved Mr. Nabas' promotion to Project Manager of Construction. *See* Defs.' Statement of Facts at ¶ 139. |
| 10/02 | Mr. Nabas was made "Acting Director" of Facilities.  Mr. Capo believes he should have gotten this promotion as well. *See generally* Defs.' Statement of Facts at ¶¶ 144-51. |
| 2/26/03 | Mr. Nabas was made Director of Facilities.  Of course, the Plaintiff believes he should have gotten the job and his application was rejected in retaliation. *See generally* Defs.' Statement of Facts at ¶¶ 152-72. |
| 5/03 | Daryl Saunders was hired as Project Manager-Construction.  The Plaintiff was "equally if not more qualified for the position than Saunders," who was hired because of the Defendants' preference for African-American employees. *See* 2d Am. Compl. at ¶¶ 43-45; *see also generally* Defs.' Statement of Facts at ¶¶ 175-190. |
| 9/24/04 | The Plaintiff filed this lawsuit. *See* Compl. (Doc. 1). |

| | |
|---|---|
| 1/31/05 | The School District's Assistant Project Directors, including Mr. Capo, had their jobs eliminated through a reduction in force. *See generally* Defs.' Statement of Facts at ¶¶ 192-210.[2]  The Plaintiff believes the RIF was disguised retaliation.  *See* 2d Am. Compl. at ¶ 52. |
| later in 2005 | Vidyadhar Patil was promoted to Chief of Construction.  Mr. Capo was "fully qualified" for this job too, and he was not selected based on retaliation, national origin and age discrimination.  *See* 2d Am. Compl. at ¶¶ 73, 75. |

As seen above, the Plaintiff has perceived discrimination regarding every employment decision made in his presence since 1998.  He also has alleged every conceivable form of employment discrimination a non-disabled white male over the age of forty can suffer.  Consequently, this case presents a diffuse jumble of legal claims spanning over eight years of employment administration.

Undoubtedly, this approach has made difficult the Defendants' efforts to state clear and concise positions on summary judgment.  Further complicating matters, their Motion presents disjointed arguments seeking judgment regarding limited theories of liability on only portions of the Plaintiff's claims.  The combined effect of these approaches has led to a summary judgment disposition that is, quite frankly, a mess.

Nevertheless, the court is tasked to resolve the identifiable legal issues presented by the Defendants' Motion.  The undersigned will do so *in seriatim*, as presented in the Defendants' brief.

---

[2]  As best as the undersigned can tell, neither the Plaintiff nor the Defendants have identified the date Mr. Capo lost his job.  The only indication is that another Assistant Project Director, Linda Mihalic, was terminated effective January 31, 2005.  *See id.* at 31 n.12.  The court may presume the Plaintiff was discharged at the same time, although the precise date is immaterial for the purposes of summary judgment.

**ANALYSIS**

      A.      **The First Amendment Claims (Count I)**

           1.      Statute of Limitations

The Defendants argue that a two-year statute of limitations applies regarding the Plaintiff's First Amendment claims under Section 1983, and that "any claims based on conduct occurring before September 24, 2002 are time-barred." *See* Defs.' Br. (Doc. 42) at 2.

There appears no dispute that the two-year statute applies, and that the Plaintiff cannot recover for discrete acts of First Amendment retaliation occurring before September 24, 2002. This conclusion, however, begs questions regarding the legal significance of the Defendants' position. Many of the identified adverse employment decisions occurred <u>after</u> September 24, 2002, and the Defendants' summary judgment request resolves neither, (a) the admissibility at trial of evidence regarding prior acts,[3] or (b) the timeliness of claims under the ADEA.[4]

A grant of summary judgment regarding the statute of limitations would be a hollow victory, indeed. It also would run contrary to the principles that disfavor piecemeal litigation. Federal Rule 56 "does not contemplate . . . summary judgment for a portion of a single claim in suit." <u>Coffman v. Federal Labs.</u>, 171 F.2d 94, 98 (3d Cir. 1948) (citation omitted); *accord* <u>New Jersey Auto. Ins. Plan v. Sciarra</u>, 103 F. Supp. 2d 388, 396 (D.N.J. 1998); <u>Testa v. Janssen</u>,

---

[3] *See, e.g.*, <u>Gaul v. ZEP Mfg. Co.</u>, 2004 WL 231298, *4 (E.D. Pa. Feb. 5, 2004) ("[A]n employee is not barred from using prior acts as background evidence in support of a timely claim[.]") (citing <u>National R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 113 (2002)).

[4] Defense counsel have limited their statute of limitations argument to the First Amendment. It is not the court's place to conduct an independent inquiry regarding the ADEA.

492 F. Supp. 198, 204 (W.D. Pa. 1980); Connelly v. Wolf, Block, Schorr & Solis- Cohen,

463 F. Supp. 914, 919 (E.D. Pa. 1978) (recognizing same). The Defendants' statute of

limitations argument can yield no meaningful result, and summary judgment should be denied.

### 2.    Protected Speech and the Petition Clause

The Defendants dedicate eight pages of their brief to explaining why the Plaintiff's

numerous complaints did not constitute protected speech under the First Amendment. *See* Defs.'

Br. at 5-13. The Court of Appeals for the Third Circuit, however, has read the First

Amendment's "Petition Clause" to extend protection to public employees who have filed charges

of discrimination with the EEOC. *See* Rendish v. City of Tacoma, 123 F.3d 1216, 1222 (9th Cir.

1997) ("[t]he Third Circuit . . . has diverged from the other circuits" by holding "that a public

employee is protected under the Petition Clause against retaliation for having filed a lawsuit even

if that lawsuit addresses matters of purely private concern") (citation omitted), *cert. denied*,

524 U.S. 952 (1998); McKinnie v. Conley, 2006 WL 1687037, *5 n.4 (E.D. Pa. Jun. 12, 2006)

(Petition Clause protection extends to employee charges with EEOC and PHRC) (citing and

quoting Anderson v. Davila, 125 F.3d 148, 162 (3d Cir.1997)).

Here, Defense counsel concedes that the Plaintiff's EEO charge in summer 2000

constituted protected activity. *See* Defs.' Br. at 14. Mr. Capo likewise filed an EEO charge on

June 18, 2001. *See* discussion *supra*. And though the Defendants urge that the second charge's

allegations of sexual harassment were frivolous, counsel has failed to show that the

contemporaneous claims of ADEA retaliation also were. *Compare* Anderson, 125 F.3d at 162

(to invoke Petition Clause, Plaintiff "need only show that his [discrimination claim] was not

frivolous") (citation omitted) *with* Defs.' Br. at 13-18 (failing to address portion of June 2001

EEO charge alleging ADEA retaliation).

      The Defendants concede Mr. Capo engaged in protected activity under the Petition

Clause.  As explained above, it makes no sense on summary judgment to further split hairs and

determine whether the Plaintiff's other complaints constituted protected speech.  Counsel's

necessary concession regarding the Petition Clause renders moot the Defendants' summary

judgment request, and it therefore should be denied.

          3.    Causation

      As the Defendants note, Mr. Capo must establish a causal link between his protected First

Amendment activity and the adverse employment decisions.  Counsel's causation arguments are

all over the map, often times relying on presumptions rejected earlier in this Report.  *See, e.g.*,

Defs.' Br. 19-21 (making statute of limitations-related arguments and ignoring EEO filing in

June 2001).[5]

      In any event, the undersigned respectfully submits that this is not the type of case where

causation issues can be resolved on summary judgment.  As seen above, The Plaintiff was quite

---

[5]  Even indulging the Defendants' arguments, they cannot succeed given the favorable presumptions
afforded the Plaintiff as non-moving party.  For example, counsel argues that the decision to promote
Mr. Nabas to Project Manager was made in August 2001, before the First Amendment statute of
limitations cutoff of September 24, 2002. *See id.* at 19.  The Defendants must concede, however, that the
decision only was finalized on September 25, 2002, a date within the limitations period. *See id.*  Under
the summary judgment standards, the Plaintiff should enjoy the benefit of the doubt regarding the
limitations issue.  On the other hand, the Defendants look to the date of the formal decision
(September 25, 2002) in arguing a lack of causal connection.  As noted above, however, the Plaintiff
filed an EEO charge in June 2001, and the Defendants claim to have first decided on Mr. Nabas'
promotion in August 2001.  Under this scenario, the summary judgment presumptions allow the Plaintiff
to argue there was only a two-month gap between the protected activity and the adverse employment
decision.  As the non-movant, Mr. Capo can have it both ways; as the movants, the Defendants cannot.

aware of his legal rights, and he was not afraid to exercise them.  *See generally* discussion *supra* (summarizing evidence that Mr. Capo complained early and often of perceived mistreatment, routinely seeking to invoke legal protections through exercise of protected activity).  In light of Mr. Capo's frequent complaints, the court has little difficulty imagining an employer growing weary of him as an employee.  The resulting impatience or animosity may, or may not, have extended to a desire or intent to retaliate against protected activity.  At a minimum, it appears fairly obvious Mr. Capo became less favored than his colleagues.  *See* discussions *supra.* The evidence reasonably infers an ongoing pattern of disfavor, and attempting to parse the motives leading to the Defendants' various employment decisions is not an exercise well suited for resolution as a matter of law.[6]

In sum, the causation issue is not an appropriate one for summary judgment and the Defendants' Motion should be denied.

**B.      Equal Protection Claim Based on First Amendment Retaliation (Count II)**

This claim is duplicative of the Plaintiff's First Amendment claims.  In the absence of contrary Third Circuit precedent, the District Court should join the well-reasoned decisions finding no cause of action under the Equal Protection clause.  *See, e.g.*, Boyd v. Illinois State Police, 384 F.3d 888, 898 (7th Cir. 2004) ("the right to be free from retaliation may be vindicated under the First Amendment or Title VII, but not the equal protection clause"; plaintiffs' equal

---

[6]  It is quite conceivable that, by the time the Plaintiff was not selected for promotions in late 2002 and beyond, the "well was so poisoned" that the Defendants were not going to consider him no matter how appropriate or qualified.  The traditional causation analysis, which among other things looks to the temporal proximity between a specific protected activity and a specific adverse employment action, does not account for the ongoing nature of the Plaintiff's complaints and/or his continued employment.

protection claim alleged "only that he was treated differently because he exercised his right to free speech" and thus was "a mere rewording of [the] First Amendment-retaliation claim") (numerous citations omitted).

### C.      ADEA Retaliation (Count III)

The Defendants provide no legal support for their assertion that Mr. Capo failed to preserve his ADEA retaliation claim. *See* Defs.' Br. at 30. Plaintiff's counsel represents that Mr. Capo's June 2001 EEO charge was open for over three years before this suit was filed, and claims of ADEA retaliation were alleged and investigated throughout. There is no basis for finding a failure to exhaust administrative remedies.

As for the Defendants' arguments regarding adverse employment action and causation, they are without merit for reasons that should be apparent from the analyses above.

### D.      Equal Protection Based on Race -- The Hiring of Mr. Saunders (Count IV)

The Plaintiff has adduced evidence that the School District was seeking to create more diversity in his department. *See, e.g.*, Pl.'s Opp'n Br. at 30 (citing record evidence that Superintendent Thompson wanted greater diversity and that interview for Mr. Nabas' director position included written statement: "The Facilities Division . . . unlike the rest of the system [is] not a diversified workforce. We are striving to get more diversity (*i.e.*, women . . . and minorities) in top positions."). He also has shown that only two people were interviewed for the relevant position, both of them were African-American, and the decision makers were aware of this fact. *See* Pl.'s Response to Defs.' Facts (Doc. 65) at ¶ 180. There is other evidence race played a role in the selection, irrespective of Mr. Capo's relative qualification. *See generally id.*

-10-

Although the undersigned would not characterize the Plaintiff's race-based claims as particularly strong, the Defendants have not shown entitlement to summary judgment. *Cf.* Iadimarco v. Runyon, 190 F.3d 151, 164 (3d Cir. 1999) (although "[a] diversity memo . . . is not, in and of itself, sufficient to establish a *prima facie* case of illegal discrimination," on summary judgment "we must draw all inferences in favor of . . . the nonmovant" and memo along with other evidence was sufficient).[7]

### E.    Elimination of the Plaintiff's Job (Counts V-VI)

The Plaintiff alleges that, after he filed this lawsuit, the Defendants contrived a reduction in force to eliminate his position, and that such action was taken in retaliation and to "[i]nterfere with [his] access to [the c]ourt." *See* 2d Am. Compl. at Count V *and* ¶¶ 51-52.

Defense counsel focus on Mr. Capo's allegation the RIF was undertaken as "punishment for [his] having commenced this action." *Cf. id.*  Not so, say the Defendants, because the decision to eliminate Mr. Capo and the other Assistant Project Directors was made before the Defendants became aware of the Complaint. *See* Defs.' Br. at 37-38.

This topic a red herring.  Irrespective of whether the RIF decision was made before or after the Plaintiff filed suit, it undoubtedly resulted in an adverse employment action

---

[7]  To be sure, Defense counsel has identified precedent indicating that Mr. Capo's burden under the Equal Protection clause is higher than that of the plaintiff in Iadimarco, who proceeded under Title VII. *See* Defs.' Br. at 34-35 ("the threshold of indirect proof for a *prima facie* case of equal protection violation is higher than in a Title VII case; a § 1983 plaintiff must show disparate impact plus some additional indicia of purposeful discrimination") (citing and quoting Williams v. Pennsylvania State Police Bureau of Liquor Control Enforcement, 108 F. Supp.2d 460, 471 (E.D. Pa. 2000)).  Assuming this to be the case, counsel nevertheless has failed to explain why the Defendants' stated desire for diversity cannot qualify as circumstantial evidence of purposeful discrimination.

-11-

(*i.e.*, Mr. Capo's termination). And though the School District's decision to terminate <u>all</u> of the Assistant Project Directors undercuts Mr. Capo's theory he was singled out for retaliation, he still may attempt to convince a jury that the decision was informed by the Defendants' desire to eliminate a problem employee (*i.e.*, him).

For these reasons, summary judgment is inappropriate.

### F.      The Plaintiff's Contract/Severance Claim (Count VII)

The Defendants argue, and Plaintiff's counsel appears to concede, that Mr. Capo cannot proceed under the Pennsylvania Wage Payment Collection Law. *See generally* <u>Philipsburg-Osceola Educ. Ass'n v. Philipsburg-Osceola Area Sch. Dist.</u>, 633 A.2d 220, 223 (Pa. Commw. 1993) ("[w]e . . . decline to extend the Wage Law to school district employers"). To this extent, summary judgment is appropriate.

Defense counsel also argues there is no contract under which Mr. Capo may seek severance benefits. *See* Defs.' Br. at 41. In response, the Plaintiff identifies the School District's "Administrators Handbook." *See* Opp'n Br. at 37.

In Pennsylvania, employee handbooks can create enforceable contract rights under certain circumstances. *See generally* <u>Morosetti v. Louisiana Land & Exploration Co.</u>, 564 A.2d 151, 152-53 (Pa. 1989) (employee handbook may form basis of implied contract, provided employee shows employer intended it to create binding obligations). The Defendants' opening papers says nothing regarding the handbook issue, nor do they address it in reply. *See generally* Defs.' Reply Br. (Doc. 75). The Defendants therefore have failed to support their request for summary judgment.

### G.     The Plaintiff's Non-Selection as Chief of Construction (Count VIII)

After Mr. Capo's termination, Vidyadhar Patil was promoted to Chief of Construction.

His discharge (and the pendency of this litigation) notwithstanding, the Plaintiff believes he

should have gotten this job as well.  *See* discussion *supra*.

Along with his allegations of retaliation and age discrimination, the Plaintiff throws in a

claim for national origin discrimination.  *See* 2d Am. Compl. at ¶ 77.  Other than the fact that

Messrs. Patil and Capo shared different national origins, there is not one shred of evidence in the

record to support this claim.  Counsel, moreover, makes no effort to resist summary judgment.

*Cf., e.g.*, <u>Wright v. Montgomery County</u>, 1998 WL 962100, *4 (E.D. Pa. Dec. 22, 1998) (finding

abandonment under similar circumstances).

The Defendants' Motion should be granted regarding national origin.

### CONCLUSION

In the end, Mr. Capo's claims present another example of an ever-increasing trend:

a case where the "tail" of retaliation "wags the dog" of employment discrimination.  As seen

above, the Plaintiff's underlying claim of ageism was neither particularly compelling nor

significant.  *See* discussion *supra* (summarizing Mr. Capo's initial claim, which was restricted to

complaint he should have been given greater seniority than another worker who shared same

title).  The School District nevertheless ceded to the charge, and this opened the floodgates to

multiple subsequent claims of retaliation and discrimination.  Now, the School District faces

legal causes almost futile to resist prior to the submission to a jury.

The weight of potential retaliation liability places the employers of overly sensitive or litigious workers in a "Catch-22" situation.  For once the employee has complained, it becomes nearly impossible for the employer to take adverse action (including, as in Mr. Capo's case, the failure to promote the plaintiff to any position for which he believes himself qualified) without facing the prospect of costly litigation.  *Cf.* Arthur D. Rutkowski, *et al.*, *Retaliation: the Tail That Wags the Dog*, 4 Employment L. Update 1 (Apr. 2000) (employers must pay "[s]crupulous attention . . . if retaliation claims aren't to become the tail that wags the dog"; even when "[the underlying] claim turns out to be groundless," "supervisors [should] immediately take steps to see that the terms and conditions of the complaining employee's job aren't affected in any negative way").

In light of the foregoing, a strong case can be made for a tightening of the applicable legal standards.[8]  The court remains bound to follow the law as it exists, however, so the undersigned is constrained to recommend the denial of the Defendants' Motion for Summary Judgment in nearly all respects.

---

[8] *See* discussion immediately *supra*; *cf. also* Carrie B. Temm, *Third-Party Retaliation Claims:  Where to Draw the Line*, 54 U. Kan. L. Rev. 865, 867 (2006) ("[w]hile the total number of Title VII charges has not shown a recent growth trend, . . . retaliation charges have doubled in the past ten years"); Matthew J. Wiles, *Defining Adverse Employment Action in Title VII Claims for Employer Retaliation: Determining the Most Appropriate Standard,* 27 U. Dayton L. Rev. 217, 218 n.5 (2001) ("employees are no longer hesitant to file retaliation claims against employers[,] . . . it has become downright fashionable to do so"; "this increased willingness to file claims shows that our now savvy employees aren't just using the discrimination laws as a shield against unlawful employment practices -- they are wielding them as a sword to [influence otherwise] legitimate . . . employment actions") (citation and internal quotations omitted, emphasis added).

-14-

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4 (B) of the Local Rules for Magistrates, objections to this report and recommendation are due by November 9, 2006.  Responses to objections are due by November 20, 2006.


October 24, 2006

Francis X. Caiazza
U.S. Magistrate Judge

cc (via email):

Edward A. Olds, Esq.
Vicki L. Beatty, Esq.
Brian P. Gabriel, Esq.